UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| WESTVIEW VILLAGE, | : | CASE NO. 1:22-cv-0549 |
| | : | |
| Plaintiff, | : | OPINION & ORDER |
| | : | [Resolving Doc. 12] |
| v. | : | |
| | : | |
| STATE FARM FIRE AND | : | |
| CASUALTY CO., | : | |
| | : | |
| Defendant. | : | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

In this insurance case, Plaintiff Westview Village and Defendant State Farm dispute how much damage a storm caused to Plaintiff's condominiums.  Plaintiff argues that the storm damage requires replacing its condominiums' roofs.  Defendant argues that ordinary wear and tear caused most of the claimed damage.

Moreover, the parties disagree about how they should resolve their dispute.  Plaintiff now moves to have a panel of appraisers determine the amount of loss.  Defendant counters that the extent of covered damage is a coverage question that this Court must answer.

For the following reasons, the Court **GRANTS** Plaintiff's motion to compel appraisal and **STAYS** this action until appraisal completes.

I.      Background

A.  Storm Damage and Insurance Payments

Plaintiff Westview Village, an Ohio nonprofit, owns condominium buildings that

Case No. 1:21-cv-01452
GWIN, J.

Defendant State Farm insures.[1]

On April 9, 2020, a storm damaged those buildings.[2]  Plaintiff submitted a claim to Defendant under the parties' insurance policy.[3]

After inspecting Plaintiff's property, Defendant paid Plaintiff $11,293.56 to repair or replace the storm-damaged property.[4]

Plaintiff believed the storm caused more damage than Defendant had reimbursed.[5] Plaintiff obtained an independent assessment from a roofing company.[6]  That company estimated that the storm damage required replacing all the buildings' roofs for $240,304.46.[7]

Defendant then paid an additional $998.77 for storm damage but attributed any remaining damage to ordinary wear and tear not covered under the policy.[8]

### B.  The Policy

The parties' policy contains an appraisal clause.[9]  It permits either party to have a panel of appraisers resolve disagreements over the amount of loss.[10]  Each party selects one appraiser.[11]  Those appraisers then select a third appraiser (an "umpire").[12]  An amount of loss that any two appraisers agree to binds the parties.[13]

---

[1] Doc. 11 at ¶¶ 1–2.
[2] *Id.* at ¶ 3.
[3] *Id.*
[4] *Id.* at ¶ 4.
[5] *Id.* at ¶ 6.
[6] *Id.*; Doc. 11-3.
[7] Doc. 11 at ¶ 6.
[8] *Id.* at ¶ 7.
[9] Doc. 11-1 at 59 (Page ID 112).
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*

- 2 -

Case No. 1:21-cv-01452
GWIN, J.

The policy does not define "amount of loss."[14]

## C.  Procedural History

On April 4, 2022, Plaintiff invoked the policy's appraisal clause and named an appraiser. [15]  It filed this suit the following day, alleging that Defendant breached the policy's terms by underpaying for Plaintiff's loss.[16] It also asked this Court to declare the parties' rights under the policy.[17]

Plaintiff now moves to compel appraisal.[18]  It argues that the parties dispute only the amount of damage the storm caused.[19]  In its view, appraisers may separate storm damage from ordinary wear and tear to set the amount of loss.[20]

Defendant opposes appraisal because the parties disagree over the scope of covered damages rather than the cost to repair them.[21]  It maintains that this Court must first determine coverage by separating storm damage from wear and tear.[22]  Then, appraisal could determine the cost to repair that storm damage if the parties still disputed it.[23]

The Court agrees with Plaintiff.

## II.    Discussion

Appraisal provides a mechanism to resolve disputes over amount of loss without litigation.[24]  As the Ohio Supreme Court noted in *Saba v. Homeland Insurance Co.*,

---

[14] *See id.*
[15] Doc 11 at ¶ 8.
[16] Doc 1 at ¶¶ 9, 13–17.
[17] Doc 1 at ¶¶ 18–23.
[18] Doc. 12.
[19] Doc. 13 at 1 (Page ID 178)
[20] Doc 16 at 7–8 (Page ID 206–07).
[21] Doc. 11 at ¶ 10.
[22] Doc. 15 at 3 (Page ID 198).
[23] *See id.*
[24] *See Saba v. Homeland Ins. Co.*, 159 Ohio St. 237, 112 N.E.2d 1 (1953).

Case No. 1:21-cv-01452
GWIN, J.

policyholders agree to policies containing appraisal provisions to avoid "the expense and delay incident to litigation."[25]  Parties may enforce appraisal provisions under Ohio law.[26]

In Ohio, appraisal "is binding as to the amount of loss."[27]  But courts resolve legal questions about coverage.[28]  This Court has recognized that "[s]eparating coverage issues from loss issues is not a simple task."[29]

Unlike some insurance policies, these parties' agreement doesn't define "amount of loss."[30]  Parties sometimes agree to a policy that prohibits appraisers from answering causation questions when setting the amount of loss.[31]  These parties' policy does not have a similar provision,[32] so Ohio courts' construction of "amount of loss" controls.

Ohio has not squarely addressed whether appraisers may determine damages' causes when setting the amount of loss.  As one Ohio appellate court explained, "[t]here is substantial debate over whether, and to what extent, appraisers and umpires may consider causation when determining the amount of loss to a structure."[33]

Because Ohio courts haven't settled the issue, this Court must anticipate whether the Ohio Supreme Court would construe "amount of loss" to permit appraisers to determine causation.[34]

While it hasn't addressed causation in appraisal directly, Ohio Supreme Court has

---

[25] *Id.* at 3.
[26] *See id.*
[27] *Prakash v. Allstate*, No. 5:20-cv-00524, 2021 WL 37698, at *2 & n.23 (N.D. Ohio 2021)
[28] *Id.* at * 2 & n.24 (emphasis removed).
[29] *Id.* at *2.
[30] *See* Doc. 11-1.
[31] *See* Ashley Smith, Comment, *Property Insurance Appraisal: Is Determining Causation Essential to Evaluating the Amount of Loss*, 2012 J. DISP. RESOL. 591, 605.
[32] *See* Doc. 11-1.
[33] See *Hull v. Motorists Ins. Grp.*, 2011-Ohio-2502, 2011 WL 2040958, ¶ 5 (9th Dist. Ct. App.). The court went on to note that because it could dispose of the case on procedural grounds, it did "not need to join the debate." *Id.*
[34] *See Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008).

- 4 -

Case No. 1:21-cv-01452
GWIN, J.

noted that appraisal allows parties to determine "the *extent* of the loss."[35]  Other

jurisdictions that allow appraisal to determine a loss's "extent" have decided that doing so

requires appraisers to separate covered damage from uncovered damage.[36]

*Quade v. Secura Insurance* illustrates.[37]  There, the parties also disputed whether

appraisal could properly separate covered storm damage from uncovered deterioration to

determine "the extent of the [covered] damage."[38] The Minnesota Supreme Court decided

that appraisers could consider causation to "separate loss due to a covered event from a

property's preexisting condition."[39]

Likewise, in a fire-damage insurance case, the Rhode Island Supreme Court explained

that:

> [When a] dispute involves the *extent* of damages and the amount of loss, it
> simply cannot be characterized as a scope-of-coverage issue. ... [T]he issue of
> causation and amount of loss are "so inextricably intertwined that attempting
> to separate them in the event even of genuine, not postulated, disputes would
> frustrate the purpose of ... appraisal ... ."[40]

Other jurisdictions follow this reasoning.[41]

Conversely, in jurisdictions that prohibit appraisers from considering causation,

appraisers may not determine the "extent" of covered damage.[42]

---

[35] *Saba*, 112 N.E.2d at 3 (quoting 46A C.J.S. Insurance § 1900) (emphasis added).
[36] *See* Smith, *supra* note 31, at 602. ("'[E]xtent of loss' gives appraisers the ability to distinguish damage caused by the covered loss from other damage.").
[37] 814 N.W.2d 703 (Minn. 2012).
[38] *Id.* at 706–07
[39] *Id.* at 707.
[40] *Hahn v. Allstate Ins. Co.*, 15 A.3d 1026, 1030 (R.I. 2011) (quoting the trial court) (emphasis added).
[41] *See, e.g.*, *Phi Epsilon Bldg. Ass'n of Alpha Chi Ro, Inc. v. RSUI Indem. Co.*, 2020 WL 972365, at *2 (N.D.N.Y. Feb. 28, 2020) (compelling appraisal where "the only question to be determined is the extent of [uncovered] costs, compared to the extent of the covered necessary repair costs"); *Coates v. Erie Ins. Exch.*, 79 Va. Cir. 440 (2009) (noting that "a question of the extent or 'amount of loss,' ... is ... appropriate for appraisal" and allowing appraisal to consider causation).
[42] *E.g.*, *Lam v. Allstate Indem. Co.*, 755 S.E.2d 544, 546 (Ga. Ct. App. 2014) ("[T]he parties could not agree upon the extent of the damage—how much of the roof was damaged by the [covered event]. Their disagreement, therefore, was over coverage, which is not a proper basis for an appraisal.").

- 5 -

Case No. 1:21-cv-01452
GWIN, J.

So, because *Saba* instructs that appraisers may determine the extent of damages, they may also consider the cause of those damages.

Even if Ohio courts were silent on whether appraisers could consider a loss's extent, the phrase "amount of loss" requires the causation determinations. Dictionaries define "loss" in the insurance context "by reference to the insurer's 'liability' under the contract."[43] And to determine what damage an insurer might be liable for under the policy, appraisers must decide what caused the damage.[44]

Courts that allow appraisal to determine causation typically permit insurers to contest coverage and assert defenses after appraisers set the amount of loss.[45] This approach agrees with the parties' agreement that "[i]f there is an appraisal, [Defendant] will still retain [its] right to deny the claim."[46]

This Court is not persuaded by cases deciding that the extent of covered damage is a coverage question. Coverage issues are contract-interpretation issues.[47] Accordingly, courts decide legal questions about "categories of coverage."[48] But the extent of damage that a covered event caused presents a factual question, not a legal one.[49]

---

[43] *Axis Surplus Ins. Co. v. Condor Corp.*, 19 F.4th 1062, 1064 (8th Cir. 2021). *See also Quade*, 814 N.W.2d at 706 ("'[L]oss' is defined as '[t]he amount of financial detriment caused by ... an insured property's damage, *for which the insurer becomes liable.*' BLACK'S LAW DICTIONARY 1030 (9th ed.2009) (emphasis added). Merriam–Webster's Collegiate Dictionary defines 'loss' in the insurance context as 'the amount of an insured's financial detriment by death or damage *that the insurer becomes liable for.*' MERRIAM–WEBSTER'S COLLEGIATE DICTIONARY 687 (10th ed.2001) (emphasis added).").

[44] See *Axis Surplus*, 19 F.4th at 1064. In *Quade*, the court noted that "amount of loss" was not ambiguous—it plainly included causation. *See* 814 N.W.2d at 706. An Ohio appellate court has also determined that a nearly identical appraisal provision was not ambiguous. *Stuckman v. Westfield Ins. Co.*, 2011-Ohio-2338, 968 N.E.2d 1012, at ¶¶ 16, 18 (3d Dist. Ct. App. 2011). But even if "amount of loss" were ambiguous, Ohio construes insurance policies liberally in the insured's favor and strictly against the insurer. *Lager v. Miller-Gonzalez*, 120 Ohio St. 3d 47, 2008-Ohio-4838, 896 N.E.2d 666, at ¶ 15.

[45] *See Walnut Creek Townhome Assoc. v. Depositors Ins. Co.*, 913 N.W.2d 80, 93–94 (Iowa 2018). There, the court explained that once appraisal was complete, the insurer could still avoid liability through the policy's anti-concurrent-cause clause. *Id.* at 94.

[46] Doc. 11-1 at 59 (Page ID 112).

[47] See *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St. 2d 166, 436 N.E.2d 1347, 1348 (1982).

[48] *See Cox v. State Farm Fire & Casualty Co.*, 2020 WL 1888824, at *7 (E.D. Mich. 2020).

[49] *See id.*

- 6 -

Case No. 1:21-cv-01452
GWIN, J.

This case embodies a factual amount-of-loss dispute appropriate for appraisal.  The

parties agree that a storm damaged Plaintiff's covered property.  And they agree that the

policy covers storm damage.  They disagree only about the storm damage's extent.

Appraisal is the proper mechanism to resolve that disagreement.

III.    Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiff's motion to compel appraisal

and **STAYS** litigation until appraisal completes.


IT IS SO ORDERED.


Dated: August 22, 2022                          s/      *James S. Gwin*
                                                JAMES S. GWIN
                                                UNITED STATES DISTRICT JUDGE

- 7 -